**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>vs.<br><br>KRISTAFER ROBINSON,<br><br>    Defendant. | Case No. 3:15-cr-00080-RCJ<br><br>**ORDER** |

Defendant moves for compassionate release based on his fear of contracting COVID-19 while incarcerated. For the reasons stated herein, the Court denies this motion.

**FACTUAL BACKGROUND**

On September 9, 2015, Robinson and his codefendant, Chase Henderson, robbed the employees of Harbor Freight at gun point. The two female victims reported that as they were locking up for the night, they were approached by two masked men—one of whom was pointing a gun at them. (PSR ¶ 8.) The robbers directed the victims back into the store and told them to lead them to the cash room. (*Id.* ¶ 9.) One of the victims opened the cash room with a key and the shorter robber went to the cash and ripped the phone cords out of the wall. (*Id.*) The shorter robber appeared to be in charge and when the taller robber went to tie up one of the victims, the shorter

robber told him it was not necessary. (*Id.* ¶ 10.) Defendant is taller than his codefendant and was assumed to be the taller of the two robbers. (*Id.* ¶ 17.)

Defendant is forty-two years old and is currently incarcerated in Terminal Island FCI with a projected release date of December 11, 2021. *Find an inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited on Dec. 10, 2020). He is six feet tall. (PSR ¶ 17.) On July 21, 2020, he weighed 215 pounds. (ECF No. 68 at 83.)[1] Based on this height and weight, Defendant has a BMI of 29.2, which means that he is considered overweight by the CDC. *Adult BMI Calculator*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Dec. 10, 2020). If one's BMI is 30.0 or greater, then the CDC would consider him to be obese. *Id.* Defendant has also been diagnosed with hyperlipidemia. (ECF No. 68 at 7.) In an unsworn statement to his counsel, Defendant claimed that he smoked cigarettes for twenty-five years. (ECF No. 66 at 11.) Defendant has also been diagnosed with major depressive disorder and anxiety disorder. (ECF No. 68 at 40.) He also suffers from chronic pain in his foot from an injury he incurred in 2006. (ECF No. 68 at 1; PSR ¶ 46.)

The CDC has identified a number of factors that increase one's risk of becoming severely ill from COVID-19. *Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Dec. 10, 2020). This list includes the following conditions that may increase one's risk, among other things: smoking, obesity, and immunocompromised state from solid organ transplant. *Id.* This list includes the following conditions that might increase one's risk, among other things: overweight and

///

---

[1] Defendant moves to seal these medical records. (ECF No. 67.) The Court grants this request.

immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines. *Id.*

### LEGAL STANDARD

A district court may not generally "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is that a court may grant a reduction to a term of imprisonment "(and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" based on "extraordinary and compelling reasons." § 3582(c)(1)(A). Congress delegated the sole authority to determine what constitutes extraordinary and compelling to the Sentencing Commission. 28 U.S.C. § 994(a)(2)(C) (requiring the Commission to promulgate policy statements for § 3582(c)); *id.* § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction . . . ."); *see Dillon v. United States*, 560 U.S. 817, 820 (2010) (holding that the Commission's policy statements are binding). Before granting such relief, the court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable" and find that "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Either the Director or a defendant may bring a motion under § 3582(c)(1)(A). A court, however, may not consider a motion brought by a defendant unless he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

///

///

///

# ANALYSIS

Defendant argues his possible contraction of COVID-19 while incarcerated is an extraordinary and compelling reason for his release. The Court finds that Defendant has not presented an extraordinary and compelling reason for relief and therefore denies this motion.

For motions under § 3582(c)(1)(A), the Commission issued its applicable policy statement as U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13 (U.S. Sentencing Comm'n 2018). Under this policy statement, compassionate release is only available where, as relevant here, a defendant proves (1) "[e]xtraordinary and compelling reasons warrant the reduction" and (2) he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13(1)(A), (2). It also provides an exclusive list of circumstances that qualify as extraordinary and compelling:

1. The defendant is suffering from a terminal illness . . . . [Or] [t]he defendant is suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
2. The defendant is at least 65 years old[,] is experiencing a serious deterioration in physical or mental health because of the aging process[,] and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
3. The death or incapacitation of the caregiver of the defendant's minor child or minor children[,] [or] [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
4. *As determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, [those described above].

§ 1B1.13 cmt. n.1(A)–(D) (emphasis added).

The Commission last modified § 1B1.13 a month before the President signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, into law. The Act materially altered § 3582(c)(1)(A) as previously only the Director could bring a motion for compassionate release.

*Compare* § 3582(c)(1)(A) (2018) *with* § 3582(c)(1)(A) (2002) (amended 2018). Section 1B1.13 fails to reflect this change and still states that it applies to "motion[s] of the Director . . . under . . . § 3582(c)(1)(A)" without mentioning motions brought by a defendant. As a consequence, courts have struggled to determine whether the list of extraordinary and compelling reasons under § 1B1.13 is still binding, especially since the Act was meant to increase the use of this safety valve. *See* First Step Act § 603(b) (titled "Increasing the use and transparency of compassionate release"); *see also FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 388–89 (1959) ("[A title of an act,] though not limiting the plain meaning of the text . . . [may] nonetheless [be] a useful aid in resolving an ambiguity.").

Many defendants, as here, have sought relief based on exigent circumstances not detailed by § 1B1.13, claiming that this amendment invalidated the entire policy statement or, at least, invalidated the provision that only the Director can determine "other reasons" for relief. *See, e.g.*, *United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019). These defendants have had some success, as several courts have found § 1B1.13 is no longer binding. *See United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) ("A growing number of district courts have concluded this means the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release.").

In so ruling, some courts have stated that the policy statement is inapplicable because it does not interpret the current version of the statute. *See, e.g.*, *United States v. Cantu*, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019). Others have concluded the Director is no longer the only party able to determine other extraordinary and compelling reasons under § 1B1.13, based on the fact that he is no longer the only party capable of bringing such motions. *See, e.g.*, *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) ("Application Note 1(D)'s prefatory language, which requires a determination by the . . . Director, is, in substance,

part and parcel of the eliminated requirement that relief must be sought by the . . . Director in the first instance . . . ."). Still more have relied on the legislative intent to increase the grants of compassionate release. *See, e.g.*, *United States v. Lopez*, No. 18-CR-2846 MV, 2020 WL 2489746, at *1 (D.N.M. May 14, 2020).

On the other hand, some courts have held that the definition of "extraordinary and compelling reasons" under § 1B1.13 remains binding because Congress has not changed the fact that the Commission—not the courts—is to define this term. *See, e.g.*, *United States v. Strain*, No. 3:97-CR-00004-TMB, 2020 WL 1977114 (D. Alaska Apr. 24, 2020). Section 994(t) reads, "The Commission . . . shall describe what should be considered extraordinary and compelling reasons . . . ." Indeed, Congress has not amended § 994 since 2006. Thus, one court concluded, "If the policy statement needs tweaking . . . , that tweaking must be accomplished by the Commission, not by the courts." *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019). This Court agrees with *Lynn* and *Strain*.

When the Commission promulgated the latest amendment to § 1B1.13, it provided a definition of "extraordinary and compelling reasons," which applied to every motion brought under § 3582(c)(1)(A). While the First Step Act expanded the scope of who could bring such motions, it did not affect the rest of the policy statement, including how the Commission defined "extraordinary and compelling reasons," nor its partial delegation of this authority to the Director. *See Strain*, No. 3:97-CR-00004-TMB, 2020 WL 1977114, at *4 ("Nothing in the First Step Act nullifies, amends, or expressly contradicts the definition of 'extraordinary and compelling reasons' provided by U.S.S.G. § 1B1.13."). As for the legislative history, it appears that Congress did intend to increase the number of compassionate releases. But Congress chose to effectuate this goal, in part, by allowing defendants to bring claims on their own accord—not by expanding the definition of "extraordinary and compelling reasons" nor changing the fact that the Commission is to define

the term. The Court therefore holds § 1B1.13 is applicable, binding, and provides the exclusive list of extraordinary and compelling reasons that may justify compassionate release unless and until Congress, the Commission, or the Director provide for additional bases.

Consequently, Defendant's purported basis for compassionate release is not extraordinary and compelling. While an increased risk of catching a disease while incarcerated (such as COVID-19) might factor into a court's calculus into whether, in its discretion, compassionate release is appropriate once a defendant has satisfied the elements—it is not an extraordinary and compelling reason under § 1B1.13 unless the Director finds it to be so in a particular defendant's case. Since Defendant does not contend that he meets the criteria under § 1B1.13 cmt. n.1(A)–(C) or claim the Director has found Defendant's circumstance to be extraordinary and compelling, Defendant fails to satisfy this element, and the Court denies the motion.

Assuming, *arguendo*, Defendant was correct, in that § 1B1.13 is no longer applicable and now "district courts have broad discretion when assessing a defendant's motion for compassionate release." (ECF No. 66 at 4.) The Court would decline to find that Defendant's circumstance is extraordinary and compelling. By in large, Defendant is a physically healthy forty-two-year-old man. The CDC merely indicates that being overweight like Defendant *might* increase one's risk from COVID-19. While the CDC indicates that some forms of immunocompromising conditions may or might increase one's risk of severe illness related to COVID-19, it failed to include depression and anxiety although these conditions have some affect on one's immune system. (*See* ECF No. 66 Ex. C ¶ 13.) And while the CDC indicates that smoking may increase one's risk, the Court has no evidence of Defendant's history of smoking besides a vague unsworn statement that he made to his counsel. Defendant has likely not been smoking for the past five years that he has been incarcerated. *See* (ECF No. 7 (arrest warrant returned executed on November 18, 2015)); BOP Program Statement 1640.05 (Jan. 7, 2015) at 3 (available at

https://www.bop.gov/policy/progstat/1640_005.pdf) (noting that inmates are generally prohibited from smoking). Even if Defendant were to contract COVID-19, the CDC estimates that people between the ages of twenty and forty-nine have a 99.98% chance of survival. *COVID-19 Pandemic Planning Scenarios*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html (last visited Dec. 10, 2020).

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Emergency Motion for Compassionate Release (ECF No. 66) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Exhibit Under Seal (ECF No. 67) is GRANTED.

IT IS SO ORDERED.

Dated December 10, 2020.

_____
ROBERT C. JONES
United States District Judge